# ELEANOR LUNDE v. NATIONAL CITIZENS BANK OF MANKATO AND ANOTHER.[1]

November 20, 1942.

No. 33,315.

[1]Reported in 6 N. W. (2d) 809.

*Wilson & Blethen* and *Arthur H. Ogle,* for appellant.
*Schmitt, Johnson & Farrish,* for respondent.

PIRSIG, JUSTICE.

Defendant National Citizens Bank of Mankato, hereafter called the bank, owned a building in Mankato, the second story of which was leased for office purposes to various tenants. These offices opened onto a hallway running east and west from one end of the building to the other. At the east end a so-called "inner door" with a glass window in it led from the hall to a vestibule. An outer door separated the vestibule from a back stairway. The bank was in charge of and maintained the hallway and the doors leading to it. On and prior to May 27, 1941, plaintiff was employed by one of the office tenants. On that day she was approaching the inner door, which was open at the time. As she came within two feet of it, a sudden gust of wind accompanying an approaching storm slammed the door shut with such force and violence that the glass in it was shattered and showered on plaintiff. In this action she seeks to recover for the injuries sustained. The only testimony produced was that for plaintiff, at the close of which defendant also rested. The verdict was for plaintiff.

The bank claims that the evidence was insufficient to sustain the verdict. The evidence permitted the jury to find that the hall and its doors were in constant use by the tenants. In the summertime the doors were usually open. Drafts through the hall were common. On several occasions, for a considerable time previous to the accident, the inner door had slammed shut and the glass window in it had been found lying broken on the floor—sometimes in water

which had rained into the hall. In these instances the door had been repaired. On other occasions it had slammed without breaking the glass. The tenants frequently used a wooden wedge, or at other times some heavy article such as a seal, to keep the inner door from swinging shut.

A landlord is under a duty to maintain the premises under his supervision and control so that they will be reasonably safe for use by his tenants and those who come upon the premises by reason of the tenants' occupation. See the recent decision of this court in Anderson v. Winkle, 213 Minn. 77, 5 N. W. (2d) 355. In the instant case the jury was entitled to find that reasonable care would have disclosed to the bank that the door had frequently blown shut with such force that the glass in it had broken and that from these conditions it could reasonably be foreseen that injury to someone entitled to use the premises might result unless measures were taken to make the door secure. It is not a defense that the natural forces against which defendant should have guarded operated in this particular instance with unusual and sudden violence. In Moore v. Townsend, 76 Minn. 64, 78 N. W. 880, the defendant negligently permitted a ladder to stand against his premises over the sidewalk. An unusual wind blew it down and injured the plaintiff. The court sustained recovery because negligence appeared in permitting the ladder to stand as it did, and (76 Minn. 68, 78 N. W. 880) "the fact that some other cause operated in connection with this negligence could not relieve defendants from liability. The original negligence concurred with another cause, and, operating at the same moment, produced the injury." See also Anderson v. M. St. P. & S. S. M. Ry. Co. 146 Minn. 430, 179 N. W. 45; Prosser, "The Minnesota Court on Proximate Cause," 21 Minn. L. Rev. 19, 55. This answers also counsel's claim here that no proximate cause existed between the negligence of the bank and the injury sustained.

It appears that plaintiff had worked in the building for many years and was familiar with the condition of the door. This, however, does not affect the right of recovery in this case. Such

knowledge does not establish that defendant did not owe plaintiff a duty to use reasonable care. The Minnesota decisions relied upon by the bank for the contrary do not so hold. Albachten v. The Golden Rule, 135 Minn. 381, 160 N. W. 1012, and Merrill v. Morris Court, Inc. 180 Minn. 565, 231 N. W. 231, hold only that no breach of a conceded duty to the plaintiff was shown. In Dehn v. Buck, 165 Minn. 310, 206 N. W. 435, and Johnson v. Ramberg, 49 Minn. 341, 51 N. W. 1043, this court held that the plaintiffs in those cases were so oblivious to their surroundings that contributory negligence, which had been raised in the cases, appeared. This issue was not raised in the present case. Language in Smith v. Emporium Merc. Co. Inc. 190 Minn. 294, 297, 251 N. W. 265, is not inconsistent with these cases. In that case contributory negligence was pleaded.

The court instructed the jury that evidence that there was glass in the door was admissible upon the ground that "it is common knowledge that anything with glass in it is a more dangerous instrumentality than if the entire door, for instance, would have been made of wood. If a thing is dangerous, to the degree that it is dangerous must those who are charged with keeping it in a reasonably safe condition bear that in mind as bearing upon the question of whether there may be possible injury to someone by reason of the material of which the instrumentality is constructed, and that is the only purpose of the evidence in reference to the glass in the door." The objection appears to be that it was error to characterize the glass window in the door as a "dangerous. instrumentality." We see no impropriety in the instruction. Just preceding it the court had instructed the jury to ignore the looseness of the glass because there was no proximate or causal relation between that and the injury. The portion objected to was merely an explanation to the jury that this did not exclude their considering the fact that the glass was in the door insofar as this bore upon the duty of the bank to use reasonable care to keep it from slamming. It was a proper and helpful comment to the jury upon the evidence, and it merits commendation rather than criti-

cism. See State v. Rose, 47 Minn. 47, 52, 49 N. W. 404; Ames v. Cannon River Mfg. Co. 27 Minn. 245, 6 N. W. 787; Larson v. Barlow, 112 Minn. 246, 127 N. W. 924. The instructions of the court did not impose a higher degree of care upon the bank than that of ordinary and reasonable care. On that question the character of the door had a proper bearing.

The lower court, over objection, permitted testimony to the effect that shortly after the accident the bank placed a doorstop upon the door. Of course the well settled rule in this state is that evidence of subsequent repairs is inadmissible as an admission of previous neglect of duty. Here it was introduced for a different purpose. The bank had requested that the jury view the premises, and this was permitted by the court at the end of the trial and with the consent of plaintiff. The premises thus viewed were not as they were at the time of the accident. To offset the erroneous impression which the jury might get from their observations, it was proper that they be informed of the changed condition and that the change was made after the accident. The evidence was expressly and only for this purpose. The court at the conclusion of the testimony and before the jury examined the premises instructed them that the stop they would find on the door did not necessarily mean that it was the kind that was there at the time of the accident, and to bear in mind the evidence in regard to changes or repairs that had been made. It may be that the court in its general charge should also have warned the jury against drawing any conclusions of neglect of duty from the repairs, but no request so to instruct was made nor were objections made to the omission. The evidence being properly admissible for the purpose referred to, the general rule stated above does not exclude it. See McKnight v. City of Duluth, 181 Minn. 450, 232 N. W. 795. But in such cases the trial court should clearly charge the jury to confine its consideration of the evidence to the issue on which it was admitted. Hammargren v. City of St. Paul, 67 Minn. 6, 69 N. W. 470, and Thompson v. Byram, 179 Minn. 67, 228 N. W. 546, are distinguishable. In the Hammargren case the evidence of

repairs purportedly was admitted upon an issue which was not disputed. Its effect could only be a harmful one. In Thompson v. Byram the form of the instruction in effect permitted the jury to use the evidence of repair on the issue of negligence.

The order denying the bank's motion for judgment notwithstanding the verdict or a new trial is affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.

[1] Reported in 6 N. W. (2d) 449.