STATE of Minnesota, Respondent,

v.

Onan A. THOMPSON, Appellant.

No. 51890.

Supreme Court of Minnesota.

June 19, 1981.

Rehearing Denied Aug. 10, 1981.

Collins, Buckley, Sauntry & Haugh, Theodore J. Collins and Dennis W. Hagstrom, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Stephen P. Kilgriff, Sp. Asst. Atty. Gen., St. Paul, Alan Mitchell, County Atty., and Mark Rubin, Asst. County Atty., Virginia, for respondent.

SHERAN, Chief Justice.

Onan A. Thompson was convicted of forgery in violation of Minn.Stat. § 609.63, subd. 1(6) (1980), which reads:

609.63 FORGERY.

Subdivision 1.  Whoever, with intent to injure or defraud, does any of the following is guilty of forgery and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $3,000, or both:

\*       \*       \*       \*       \*       \*

(6) Without authority of law, destroys, mutilates, or by alteration, false entry, or omission, falsifies any record, account, or other document relating to a person, corporation, or business, or filed in the office of, or deposited with, any public office or officer. * * *

*Id.* He was sentenced to three years and fined $3000. Instead of imprisonment, he was placed on probation for two years. The jury found that in 1978 Thompson had altered figures on a dental insurance "experience report" and sent it to his policy holder, the school district in Virginia, Minnesota, with the intent to injure or defraud required by section 609.63, subd. 1(6).

The defendant has appealed an order of the trial court denying his motion for a new trial and the judgment of the trial court. He has claimed that the evidence was insufficient to support his conviction by the jury, that he was denied a fair trial as a result of a statement made by the prosecutor during closing argument, and that the trial court erred in admitting testimony claimed by the defendant to be privileged under the attorney-client privilege. The trial court denied the motion for a new trial and entered judgment of guilt. We affirm the denial of the motion and the judgment.

At the time of the offense, the defendant was the president of Delta Dental Plan of Minnesota, a non-profit Minnesota corporation providing dental insurance. In mid-November of 1978, a representative of the Virginia school district asked Delta Dental for a copy of the district's experience report. The report shows claims paid and premiums collected during the current and past twelve-month contracts. The district's contract ended January 1, 1979, but was automatically renewed unless either party elected to cancel and gave notice 30 days before the renewal date.

In November, a decision had been made at Delta Dental not to seek a premium increase because the Virginia premiums paid over the year exceeded the Virginia claims Delta Dental paid out that year by $28,000. In response to the school district's first request for the experience report, the representative was told only that the premiums would not be increased. No report was sent. After a second request, the defendant personally took action in the case.

The defendant obtained a copy of the experience report and initiated a meeting with Fred Argir, who represented the union affected by the school district's contract. The union had participated in the original negotiation of the contract. Thompson testified that he showed Argir the report indicating the $28,000 excess at their meeting in Hibbing. He said Argir asked him to decrease the excess. The explanation given for this was that the excess would cause the premium to be lowered, which would amount to a decrease in the monetary value of the overall benefits received by his union, since the district paid the premiums. Argir denied asking Thompson to decrease the excess. Thompson testified that he altered the figures on the experience report, increasing the amount of claims paid in order to decrease the $28,000 excess. He changed the figures to show a $12,000 excess.

Thompson testified that he sent the altered report to the school district in late December of 1978. The report was disseminated to potential bidders when the school district decided to seek new bids on the contract in February of 1979.

Delta Dental won the bid again in February. That spring, an internal investigation of the Virginia contract was undertaken at Delta Dental. A grand jury investigation also took place that summer, culminating in Thompson's indictment in October. With the true experience report released, Delta Dental again won the Virginia contract in a rebidding in November of 1979.

■ The defendant contends that the evidence does not substantiate that he had the intent necessary for a forgery conviction—the intent to injure or defraud—when he altered the figures on the experience report. He contends that Argir's testimony should not be believed because Argir is a confessed liar, having admitted on the stand that he had recounted a different version of

the Hibbing meeting when not under oath. The defendant claims he changed the figures at Argir's behest in order to satisfy Argir, but not to injure or defraud the district. He also claims that he could have no motive to injure the district because the contract had been automatically renewed by the time he sent the report. He also contends that testimony of an admission he made during Delta Dental's internal investigation should not have been admitted.

We agree with the trial judge that the evidence of the defendant's guilt was overwhelming. The defendant's claimed desire to please Argir is irrelevant. The fact remains that Thompson intentionally altered the experience report and submitted it to the school board which intended to make a decision based on information in the report. That clearly evinces an intent to injure or defraud.

■ Appellant next contends that the prosecutor improperly appealed to the passion and prejudice of the jury by exhorting the jury during closing argument to "let the word go forth from this courtroom," if the jury concluded Thompson was guilty. Appellant contends that the prosecutor attempted to place corporate America on trial instead of Thompson. Given the clear evidence of guilt, we are satisfied that nothing said by the prosecutor would have had any impact on the jury's decision. *See State v. Clark*, 296 N.W.2d 372 (Minn.1980); *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197 (1974).

■ Finally, we find it unnecessary to decide whether the defendant is correct in his claim that certain testimony was protected by the attorney-client privilege. Delta Dental's attorney at the time participated in or witnessed the corporation's internal investigation. He testified at the defendant's trial as to what the defendant said during the investigation. It is unnecessary for us to reach the issue of whether or not Thompson's communication to the attorney was protected by the attorney-client privilege, given the subsequent conduct of all the parties involved. If such a privilege existed, it was fully waived by the willing disclosures by Thompson, Delta Dental, and others prior to Thompson's trial, of the results of its internal investigation, including reports, notes, and statements. *State ex rel. Schuler v. Tahash*, 278 Minn. 302, 154 N.W.2d 200 (1967). The information was released to the attorney general as well as the grand jury. We find here no occasion to apply a doctrine of "limited" waiver, which some courts have applied in unique circumstances. *See, e. g., Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977); *In re Grand Jury Subpoena Dated July 13, 1979*, 478 F.Supp. 368 (E.D.Wis.1979).

Affirmed.